1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILED**

AUG 2 2 2014

**RICHARD W. WIEKING**
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VINCENT RIVERA,

          Petitioner,

    v.

ANTHONY HEDGPETH, Warden,

          Respondent.

No. C 12-03078 BLF (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

    Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] The Court ordered Respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition. Petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and denies the petition.

### PROCEDURAL HISTORY

    Petitioner was sentenced to twenty-one years and four months in state prison in San Francisco County Superior Court, after a jury found him guilty of second degree

[1] This matter was reassigned to this Court on April 17, 2014.

1   robbery, assault with a deadly weapon, two counts of participation in a criminal street

2   gang, and possession of cocaine base for sale.  The jury also found true enhancement

3   allegations for personally inflicting great bodily injury in connection with the robbery,

4   assault, and one of the gang participation charges, acting in furtherance of a criminal

5   street gang in connection with the robbery and drug charges, and for personally using a

6   deadly weapon in connection with the robbery and one of the gang participation charges.

7   The only enhancement allegation which the jury found not to be true was the allegation

8   that the assault was committed in association with street gang activities.

9        Petitioner filed a direct appeal to the California Court of Appeal, which affirmed

10   the conviction and judgment.  The California Supreme Court denied review.

11        Petitioner then filed petitions for writ of habeas corpus in the state superior,

12   appellate and high courts, with the California Supreme Court denying the petition on May

13   16, 2012.  Petitioner filed the instant federal habeas petition on June 16, 2012.

14

15                                    **BACKGROUND**[2]

16        The victim, Angel Zavala, a Spanish-speaking construction worker,
     purchased a snack at a fast food restaurant in the Mission District of San
17   Francisco around 10:00 p.m. on April 14, 2007. As Zavala walked out of
     the restaurant, a group of three men approached and surrounded him. One
18   asked, "que rifas," which the court interpreter translated as, "what do
     [you] claim?"  Zavala understood the question to ask whether he was part
19   of a gang, and it made him "nervous," since he assumed it meant the three
     were themselves gang members. The three men moved closer to Zavala,
20   and one of them took his wallet. Zavala felt the hand reach into his
     pocket, but he did not resist because it happened quickly and he was
21   concerned "they were going to beat me up."

22        After taking Zavala's wallet, the three men casually walked off.
     Zavala followed soon after, "thinking of getting my wallet back." As he
23   approached, he told them to return the wallet or he would call the police.
     When the three merely laughed in response, Zavala tried unsuccessfully to
24   hit one of them. As he did so, he was stabbed in the chest by one of the
     men. Zavala returned to the restaurant and collapsed.

25        During the subsequent stay in the hospital, Zavala identified

26   _____

27        [2]The facts of this case are taken from the California Court of Appeal opinion in
28   *People v. Rivera*, No. A124435 (Cal. App. 1 Dist. Dec. 16, 2010).  (Ans. Ex. 8 ("Op").)

1    pictures of two of the three men. It is not clear from his testimony
2    whether one of the pictured men was defendant, but all three defendants
     were tied to the crime through surveillance video that caught the
3    confrontation. [Petitioner] was identified as the person who stabbed
     Zavala.

4    (Op. at 2.)

5                                  **DISCUSSION**

6    A.    <u>**Standard of Review**</u>

7           This Court may entertain a petition for writ of habeas corpus "in behalf of a person

8    in custody pursuant to the judgment of a state court only on the ground that he is in

9    custody in violation of the Constitution or laws or treaties of the United States." 28

10   U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996

11   ("AEDPA"), a district court may not grant a petition challenging a state conviction or

12   sentence on the basis of a claim that was reviewed on the merits in state court unless the

13   state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or

14   involved an unreasonable application of, clearly established federal law, as determined by

15   the Supreme Court of the United States; or (2) resulted in a decision that was based on an

16   unreasonable determination of the facts in light of the evidence presented in the state

17   court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law

18   and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 384-86 (2000),

19   while the second prong applies to decisions based on factual determinations, *Miller-El v.*

20   *Cockrell*, 537 U.S. 322, 340 (2003).

21          "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

22   state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

23   question of law or if the state court decides a case differently than [the] Court has on a set

24   of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court

25   decision is an "unreasonable application of" Supreme Court authority, falling under the

26   second clause of § 2254(d)(1), if the state court correctly identifies the governing legal

27   principle from the Supreme Court's decisions but "unreasonably applies that principle to

28   the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not

1   issue the writ "simply because that court concludes in its independent judgment that the

2   relevant state-court decision applied clearly established federal law erroneously or

3   incorrectly." *Id.* at 411.

4        "Under the 'unreasonable application' clause, a federal habeas court may grant the

5   writ if the state court identifies the correct governing legal principle from [the Supreme

6   Court's] decisions but unreasonably applies that principle to the facts of the prisoner's

7   case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application'

8   clause, . . . a federal habeas court may not issue the writ simply because that court

9   concludes in its independent judgment that the relevant state-court decision applied

10  clearly established federal law erroneously or incorrectly." *Id.* at 411. A federal habeas

11  court making the "unreasonable application" inquiry should ask whether the state court's

12  application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

13  The federal habeas court must presume correct any determination of a factual issue made

14  by a state court unless the petitioner rebuts the presumption of correctness by clear and

15  convincing evidence. 28 U.S.C. § 2254(e)(1).

16       The state court decision to which Section 2254(d) applies is the "last reasoned

17  decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

18  *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned

19  opinion from the highest state court considering a petitioner's claims, the court "looks

20  through" to the last reasoned opinion. *See Ylst*, 501 U.S. at 805. In this case, the last

21  reasoned opinion is that of the California Court of Appeal with respect to Petitioner's first

22  claim. (Ans. Ex. 8.) The state high court's order denying Petitioner's habeas petition is

23  the last reasoned opinion for the purposes of Petitioner's second and third claims. (Id.,

24  Ex. 14.)

25       The Supreme Court has vigorously and repeatedly affirmed that under AEDPA,

26  there is a heightened level of deference a federal habeas court must give to state court

27  decisions. *See Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (per curiam); *Harrington v.*

28  *Richter*, 131 S. Ct. 770, 783-85 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per

1  curiam).  As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a

2  highly deferential standard for evaluating state-court rulings' and 'demands that

3  state-court decisions be given the benefit of the doubt.'"  *Id.* at 1307 (citation omitted).

4  With these principles in mind regarding the standard and limited scope of review in which

5  this Court may engage in federal habeas proceedings, the Court addresses Petitioner's

6  claims.

7  B.     **Legal Claims and Analysis**

8          Petitioner raises three claims as grounds for federal habeas relief: (1) there was

9  insufficient evidence to support the robbery conviction; (2) there was insufficient

10  evidence to support the criminal street gang enhancements for the robbery and drug

11  charges; and (3) ineffective assistance by appellate counsel.

12          1.     **Insufficient Evidence to Support Robbery Conviction**

13          The Due Process Clause "protects the accused against conviction except upon

14  proof beyond a reasonable doubt of every fact necessary to constitute the crime with

15  which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who

16  alleges that the evidence in support of his state conviction cannot be fairly characterized

17  as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt

18  therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979),

19  which, if proven, entitles him to federal habeas relief, *see id.* at 324.

20          The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal

21  habeas proceedings...." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam)

22  (per curiam) (finding that the 3rd Circuit "unduly impinged on the jury's role as

23  factfinder" and failed to apply the deferential standard of *Jackson* when it engaged in

24  "fine-grained factual parsing" to find that the evidence was insufficient to support

25  petitioner's conviction).  A federal court reviewing collaterally a state court conviction

26  does not determine whether it is satisfied that the evidence established guilt beyond a

27  reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510

28  U.S. 843 (1993); *see, e.g., Coleman*, 132 S. Ct. at 2065 ("the only question under *Jackson*

1    is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold

2    of bare rationality"). The federal court "determines only whether, 'after viewing the

3    evidence in the light most favorable to the prosecution, any rational trier of fact could

4    have found the essential elements of the crime beyond a reasonable doubt.'" *Payne*, 982

5    F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could

6    have found proof of guilt beyond a reasonable doubt, has there been a due process

7    violation. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338; *Miller v. Stagner*, 757 F.2d

8    988, 992-93 (9th Cir.), *amended*, 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S.

9    1048, *and cert. denied*, 475 U.S. 1049 (1986); *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th

10    Cir.), *cert. denied*, 469 U.S. 838 (1984).

11       Circumstantial evidence and inferences drawn from that evidence may be

12    sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).

13    Mere suspicion and speculation cannot support logical inferences, however. *Id.*

14    "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the

15    evidence presented at trial requiring only that jurors 'draw reasonable inferences from

16    basic facts to ultimate facts." *Coleman*, 132 S. Ct. at 2064.

17       After AEDPA, a federal habeas court applies the standards of *Jackson* with an

18    additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

19    Generally, a federal habeas court must ask whether the operative state court decision

20    reflected an unreasonable application of *Jackson* to the facts of the case. *Coleman*, 132 S.

21    Ct. at 2062; *Juan H.*, 408 F.3d at 1275 (quoting 28 U.S.C. § 2254(d)). Thus, if the state

22    court affirms a conviction under *Jackson*, the federal court must apply § 2254(d)(1) and

23    decide whether the state court's application of *Jackson* was objectively unreasonable. *See*

24    *McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010); *Sarausad v. Porter*, 479 F.3d 671, 677-

25    78 (9th Cir. 2007). To grant relief, therefore, a federal habeas court must conclude that

26    "the state court's determination that a rational jury could have found that there was

27    sufficient evidence of guilt, i.e., that each required element was proven beyond a

28    reasonable doubt, was objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 964-

1   965 (9th Cir. 2011).

2          Petitioner claims that there was no evidence "that property was taken by force or

3   fear" or that "a robbery, instead of a theft, had occurred." (Pet. Attach. at 5.) Petitioner

4   asserts that no demands were made on the victim, "either explicitly or implicitly," and

5   that "no indications of aggression were projected." (*Id.* at 7.) On direct appeal, the Court

6   of Appeal rejected this claim:

7          Contrary to [Petitioner]'s claim, we find substantial evidence to
    support the "force or fear" element of robbery under either of the two
8   independent theories. First, the jury could readily have concluded that the
    defendants' conduct was designed to intimidate the victim, using fear to
9   discourage him from resisting the taking of his wallet. The three
    approached Zavala with superior numbers and assumed positions on all
10  sides of him, creating a threatening atmosphere and making resistance or
    escape more difficult. One of them addressed him using a catchphrase for
11  gang membership, thereby communicating their own gang membership and
    bringing to bear the coercive power of the gang. Then they moved closer,
12  intensifying the threat. Only at that time did one of the defendants remove
    Zavala's wallet. The jury could easily have found the defendants' conduct
13  prior to taking the wallet – closely surrounding Zavala and using a gang
    membership catchphrase – was ""'"reasonably calculated to produce
14  fear."'"" (*People v. Bordelon, supra,* 162 Cal.App.4th at p. 1319; see, e.g.,
    *People v. Davison* (1995) 32 Cal.App.4th 206, 216 ["fear" element of
15  robbery satisfied where two men approached the victim at an ATM
    machine, stood very close, stared at her, and told her to step back, allowing
16  them to take the money].)

17         The jury also reasonably could have concluded that the effort to
    intimidate was successful. The victim testified that he was made "nervous"
18  by the defendants' manner and their question. When his wallet was taken,
    he initially did not resist because he was concerned they would assault him.
19  Accordingly, there was substantial evidence ""'"that the victim was in fact
    afraid, and that such fear allowed the crime to be accomplished."'"" (*People
20  v. Bordelon, supra,* 162 Cal.App.4th at p. 1319), since the victim's fear
    permitted the defendants to gain and retain possession of the wallet. (See
21  *People v. Flynn, supra,* 77 Cal.App.4th at p. 772.)

22         ...

23         Second, the jury could have concluded that [Petitioner]'s knife strike
    was intended to prevent the victim from any further attempt to reclaim his
24  property. As noted above, the crime of theft continues until "the loot is
    being carried away to a place of temporary safety." (*People v. Cooper,*
25  *supra,* 53 Cal.3d at p. 1165.) If a perpetrator uses force against a victim to
    aid this escape, the "force" element of robbery is satisfied. (See, e.g.,
26  *People v. Gomez, supra,* 43 Cal.4th at p. 265 [where defendant who had
    taken goods without violence shot at his pursuer during the escape, "force"
27  element was satisfied].) When the attack occurred, these defendants were
    on a public street no more than a few yards from the scene of the theft, in
28  full view of the victim. They therefore had not reached a place of

1    temporary safety.  Even if the theft was not a robbery as a result of the
     defendants' conduct up to that point, knife strike intended to prevent the
2    victim from reclaiming his wallet would have converted the theft into a
     robbery.

3
            This situation is not materially different from that of *People v. Pham*
4    (1993) 15 Cal.App.4th 61, in which the victim discovered the defendant
     rummaging through his car.  As the victim approached, the defendant ran
5    off with stolen property, pursued by the victim.  When the victim caught up,
     the defendant turned and began hitting him.  (*Id.* at p. 64.)  The court
6    concluded the defendant's blows satisfied the element of force, rejecting the
     defendant's contention that the force must be applied before asportation to
7    constitute robbery.  (*Id.* at pp. 65-66.)

8    Op. at 4-6.

9           Here, after viewing the evidence in the light most favorable to the prosecution, the

10   Court concludes that any rational trier of fact could have found the essential elements of

11   robbery beyond a reasonable doubt.  *See Payne*, 982 F.2d at 338.  The state appellate

12   court was not unreasonable in finding that a jury could reasonably conclude defendants'

13   conduct was "reasonably calculated to produce fear": (1) the three defendants

14   outnumbered and surrounded the victim, creating a "threatening atmosphere" and making

15   resistance or escape more difficult; (2) they communicated their gang membership by

16   using a known gang catchphrase, "bringing to bear the coercive power of the gang"; (3)

17   they moved closer and intensified the threat; and (4) then one of the defendants removed

18   the victim's wallet.  *See supra* at 7.  Furthermore, any rational trier of fact could find that

19   the effort to intimidate was successful because: (1) the victim said he was made

20   "nervous" by the defendants' conduct, and (2) he did not initially resist his wallet being

21   taken because he was concerned they would assault him.  *Id.*  Although no explicit verbal

22   threats or demands were made by defendants as Petitioner asserts, their conduct clearly

23   created a "threatening atmosphere."  *Id.*  From these circumstances, it was not

24   unreasonable for the state appellate court to conclude that the jury could draw the

25   reasonable inference that the victim was too afraid to prevent his wallet from being taken.

26   *See Coleman*, 132 S. Ct. at 2064.

27          Petitioner claims that "force or fear" was not shown because the victim testified at

28   the preliminary hearing that he did not resist the taking of his wallet because it happened

too quickly. (Pet. Attach. at 5.) The state appellate court also rejected this argument and was not unreasonable in doing so. Op. at 5. At trial, the victim testified that he did not resist because it happened quickly *and* because he was intimidated. *See supra* at 2. Notwithstanding the victim's failure to mention intimidation in his preliminary hearing testimony, the jury was entitled to accept his testimony at trial. The jury could also infer, based on the circumstances described above, that the victim did not initially challenge the taking of his wallet because he feared the consequences, *i.e.*, that "'they were going to beat me up.'" *Id.*

Petitioner also attempts to liken the incident to a pickpocketing rather than to a robbery. (Pet. Attach. at 8.) However, as the state court pointed out, "[a] successful pickpocket removes property by stealth and leaves the victim unaware any property was stolen... In contrast, the defendants made no attempt to disguise their presence or their purpose." Op. at 5-6. The victim was well aware that defendants had taken his wallet, and the jury could reasonably conclude that defendants used intimidation to accomplish that act.

Even if the initial taking of the wallet was a theft and not a robbery, a reasonable jury could find that it was converted into a robbery when Petitioner used "force", *i.e.*, a knife strike, to prevent the victim from reclaiming his wallet. *See supra* at 7. The victim testified that the removal of the wallet from his pocket happened too quickly to stop, but he was still aware that it was being taken. *Id.* at 2. The theft was still in progress when the victim later attempted to reclaim his wallet because Petitioner and his cohorts had not yet removed the wallet to a place of "temporary safety": they were on a public street, had progressed just a few yards from where they had initially taken the wallet, and remained in full view of the victim. *Id.* at 7. When the victim attempted to hit Petitioner – to either recover his wallet or prevent Petitioner from escaping – Petitioner responded by stabbing the victim with a knife. Petitioner contends that the victim approached them later only to "execute a type of vigilante justice, not to retrieve his wallet." (Pet. Attach. at 11). However, the victim testified at trial that he went after Petitioner "thinking of getting my

1  wallet back," and that he warned defendants he would call the police if they did not return

2  his wallet. *See supra* at 2. Petitioner's argument that the victim was not attempting to

3  retrieve his wallet and was only attacking him out of vengeance is not persuasive,

4  especially in light of the fact that the victim warned them he would call the police. The

5  circumstantial evidence supports the inference that Petitioner used "force or fear" to

6  prevent the victim from reclaiming his wallet, and therefore was sufficient to sustain the

7  robbery conviction. *See Walters v. Maass*, 45 F.3d at 1358. Accordingly, Petitioner is

8  not entitled to relief on this claim because the state appellate court's determination that a

9  rational jury could have found that there was sufficient evidence of guilt for the robbery

10  conviction was not objectively unreasonable. *See Boyer*, 659 F.3d at 964-965.

11         2.  **Insufficient Evidence to Support Criminal Street Gang Enhancements**

12         Petitioner claims that there was insufficient evidence to support the criminal street

13  gang enhancements imposed in connection with his robbery and drug convictions.[3]

14  Petitioner raised this claim for the first time in a state habeas petition before the San

15  Francisco Superior Court. The superior court determined that the claim was not

16  cognizable on habeas corpus for two reasons: (1) the claim should have been raised on

17  direct appeal, citing *In re Harris*, 5 Cal.4th 813, 829 (1993); and (2) an insufficiency of

18  the evidence claim may not be raised on habeas corpus, citing *Ex Parte Horowitz*, 33

19  Cal.2d 534, 546 (1949) and *In re Lindley*, 29 Cal.2d 709, 723 (1947). (Ans. Ex. 13.) The

20  state appellate court summarily denied the petition, (*id.*), and the state high court denied

21  relief with citations to *In re Waltreus*, 62 Cal.2d 218, 225 (1965), *In re Dixon*, 41 Cal.2d

22  756, 759 (1953), and *In re Lindley*, 29 Cal.2d 709, 723 (1947). (Ans. Ex. 14.)

23  Respondent argues that the California Supreme Court's imposition of valid state

24  procedural bars under *In re Dixon* and *In re Lindley* prohibits consideration of this claim

25

26        —————————————

27       [3]On direct appeal, Petitioner raised a sufficiency of the evidence claim only as to
the gang enhancement charged in connection with the assault conviction. However, the

28  California Court of Appeal found it unnecessary to consider the claim because the jury
found this allegation not proven. (Op. at 3, n.1.)

1 │ on federal habeas.[4] (Ans. at 8-9.)

2 │          a.    **Standard of Review**

3 │          As a matter of comity and federalism, a federal court on federal habeas will not

4 │ review questions of federal law decided by a state court if that decision also rests on a

5 │ state law ground that is independent of the federal question and adequate to support the

6 │ judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  The procedural default

7 │ rule is a specific instance of the more general "adequate and independent state grounds"

8 │ doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994).

9 │          It is only the violation of a state procedural rule, and not, for example, mere failure

10 │ to raise a claim in circumstances where no rule requires raising it, that triggers the

11 │ procedural default doctrine.  *See English v. United States*, 42 F.3d 473, 477 (9th Cir.

12 │ 1994) (§ 2255 case; not procedural default to fail to raise claims for first time in petition

13 │ for certiorari or motion to recall mandate, either of which would have been improper).

14 │ "Procedural default requires the by-pass of a procedural requirement, and not merely the

15 │ by-pass of a procedural opportunity." *Id.* (citation and internal quotation marks omitted).

16 │          In cases in which a state prisoner has defaulted his federal claims in state court

17 │ pursuant to an independent and adequate state procedural rule, federal habeas review of

18 │ the claims is barred unless the prisoner can demonstrate cause for the default and actual

19 │ prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

20 │ consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501

21 │ U.S. at 750.  A petitioner must establish factual innocence in order to show that a

22 │ fundamental miscarriage of justice would result from application of procedural default.

23 │

24 │          [4]California's *In re Waltreus*, 62 Cal. 2d 218 (1965), *cert. denied*, 382 U.S. 853

25 │ (1965), provides that "'any issue that was *actually* raised and rejected on appeal cannot be renewed in a petition for writ of habeas corpus.'" *Forrest v. Vasquez*, 75 F.3d 562, 564

26 │ (9th Cir. 1996) (quoting *In re Harris*, 855 P.2d 391, 398 (1993)).  Logically, this citation can only apply to Petitioner's claim that there was insufficient evidence to support the

27 │ robbery conviction which he raised both on direct appeal and in his state habeas petitions.

28 │ Accordingly, the Court will not consider whether *Waltreus* bars Petitioner's challenge to the gang enhancements.

1   *See Gandarela v. Johnson*, 275 F.3d 744, 749-50 (9th Cir. 2002); *Wildman v. Johnson*,

2   261 F.3d 832, 842-43 (9th Cir. 2001).

3                    **b.      Adequate and Independent State Grounds**

4                    California's *In re Dixon*, 41 Cal.2d 756, 264 P.2d 513 (1953), provides that

5   to bring a claim in a state habeas corpus action a petitioner must first, if possible, have

6   pursued the claims on direct appeal from his conviction unless the claim falls within

7   certain exceptions. *See Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000).  This is

8   known as the "*Dixon* rule." *See id.*  The *Dixon* rule bars a petitioner from raising a claim

9   in a habeas proceeding that could have been, but was not, raised on appeal.  *In re Harris*,

10  5 Cal. 4th 813, 934 (1993).[5]  Although the *Dixon* rule was not consistently applied before

11  *Harris* was decided, *see Fields v. Calderon*, 125 F.3d 757, 765 (9th Cir. 1997) (refusing

12  to honor *Dixon* rule where default occurred before *Harris*), federal courts have since

13  upheld application of the *Dixon* bar where the petitioner has failed to present authority

14  that it has been inconsistently applied. *See Protsman v. Pliler*, 318 F. Supp. 2d 1004,

15  1013-14 (S.D. Cal. 2004) (finding that the *Dixon* bar rests on independent and adequate

16  state law grounds); *accord Flores v. Roe*, 228 Fed. Appx. 690, 691 (9th Cir. 2007) (where

17  respondent adequately raised *Dixon* procedural bar defense to petition, burden shifted to

18  petitioner to place the defense at issue by asserting factual allegations that demonstrate

19  the inadequacy of the state procedure, including citation to authority demonstrating

20  inconsistent application of the rule); *see also Bennett v. Mueller*, 322 F.3d 573, 586 (9th

21  Cir. 2003).  Here, Petitioner does not attempt to overcome the procedural bar under the

22  *Dixon* rule, or any other rule, in either his petition or his traverse wherein he argues the

23  _____

24      [5]In *Harris*, the California Supreme Court set specific standards for the application
    of the *Dixon* rule. *See Park*, 202 F.3d at 1151-52 & n.3. The exceptions summarized in
25  *Harris* are: (1) fundamental constitutional error; (2) lack of jurisdiction over the
    petitioner; (3) the trial court's acting in excess of its jurisdiction or (4) an intervening
26  change in the law. *See Park*, 202 F.3d at 1152. *Harris*'s "fundamental constitutional
    error" exception permits a hearing on the merits of a state habeas petition "when the
27  habeas corpus petitioner claims a violation of his or her fundamental constitutional
    rights." *In re Harris*, 5 Cal. 4th at 829.
28

1 claim only on the merits.  Accordingly, he has failed to meet his burden of demonstrating
2 the inadequacy of the *Dixon* rule to overcome this procedural bar.

3       Lastly, the state procedural bar rule of *In re Lindley*, 29 Cal. 2d 109 (1947), that
4 sufficiency of the evidence claims cannot be raised in a state habeas petition, constitutes
5 an independent and adequate state ground barring federal review.  *Carter v. Giurbino*,
6 385 F.3d 1194, 1198 (9th Cir. 2004).  California state courts have consistently applied the
7 *Lindley* procedural bar since 1947.  *Id.*  Therefore, it is clear that Petitioner has defaulted
8 his claim challenging the sufficiency of the evidence to support the gang enhancements in
9 state court pursuant to independent and adequate state procedural rules, and is therefore
10 barred from federal habeas review unless he can demonstrate cause and prejudice or a
11 fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.

12            **c.**    **Cause and Prejudice**

13       The cause standard requires the petitioner to show that "'some objective factor
14 external to the defense impeded counsel's efforts'" to construct or raise the claim."
15 *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citing *Murray v. Carrier*, 477 U.S. 478,
16 488 (1986)).  Petitioner does not explicitly argue cause and prejudice, and in fact does not
17 challenge the procedural bar in any meaningful way.  But in his third claim, Petitioner
18 alleges that his appellate counsel was ineffective for failing to challenge the sufficiency
19 of the evidence in support of the gang enhancements. (Pet. Attach. at 34.)  A petitioner
20 may show cause by establishing constitutionally ineffective assistance of counsel, but
21 attorney error short of constitutionally ineffective assistance of counsel does not
22 constitute cause and will not excuse a procedural default.  *See McCleskey*, 499 U.S. at
23 494; *Carrier*, 477 U.S. at 486-88.  In the discussion below addressing the merits of this
24 Sixth Amendment claim, the Court finds that appellate counsel's performance was not
25 constitutionally deficient.  *See infra* at 16-17.  Furthermore, Petitioner states that counsel
26 initially made an argument for this claim and then later withdrew the issue.  (Pet. Attach.
27 at 34.)  However, such a failure on counsel's part to raise the claim despite recognizing it,
28 does not constitute cause.  *See Carrier*, 477 U.S. at 486; *Villafuerte v. Stewart*, 111 F.3d

1 | 616, 629 (9th Cir. 1997); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

2 |      Petitioner must also show actual prejudice resulting from the errors of which he

3 | complains. *See McCleskey*, 499 U.S. at 494; *United States v. Frady*, 456 U.S. 152, 168

4 | (1982). Petitioner bears the burden of showing, not merely that errors at his trial created a

5 | possibility of prejudice, but that they "worked to his *actual* and substantial disadvantage,

6 | infecting his entire trial with error of constitutional dimensions." *Id.* at 170 (emphasis in

7 | original). For the reasons discussed below in addressing Petitioner's third claim, the

8 | Court finds Petitioner also fails to show prejudice, *i.e.*, that but for appellate counsel's

9 | error, Petitioner would have prevailed on appeal. *See infra* at 17. Accordingly, because

10 | Petitioner has failed to show cause and prejudice, federal habeas review of this claim is

11 | barred. *Coleman*, 501 U.S. at 750.

12 |         **d.**    **Fundamental Miscarriage of Justice**

13 |      Nowhere does Petitioner assert that a fundamental miscarriage of justice would

14 | result from an application of procedural default. However, even if the Court were to

15 | consider its application, there is no indication that Petitioner would be able to establish

16 | factual innocence to warrant this exception. *See Gandarela*, 275 F.3d at 749-50. The

17 | Supreme Court has limited the "miscarriage of justice" exception to habeas petitioners

18 | who can show that "a constitutional violation has probably resulted in the conviction of

19 | one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray*

20 | *v. Carrier*, 477 U.S. at 496); *see Johnson v. Knowles*, 541 F.3d 933, 936-38 (9th Cir.

21 | 2008) ("[t]he miscarriage of justice exception is limited to those *extraordinary* cases

22 | where the petitioner asserts his innocence and establishes that the court cannot have

23 | confidence in the contrary finding of guilt."); *see, e.g., Wildman v. Johnson*, 261 F.3d

24 | 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show

25 | that a fundamental miscarriage of justice would result from application of procedural

26 | default). Petitioner only challenges the type of evidence used to support the

27 | enhancements, and has set forth no new evidence to indicate that his case is one of those

28 | "extraordinary" cases where the court cannot have confidence in the guilty verdict. *See*

1 | *Knowles*, 541 F.3d at 936-38.

2 | 3.   **Ineffective Assistance by Appellate Counsel**

3 | As mentioned above, *see supra* at 13, Petitioner claims that his appellate counsel

4 | rendered ineffective assistance for failing to challenge the sufficiency of the evidence to

5 | support his criminal street gang enhancements on direct appeal. (Pet. Attach. at 34.) The

6 | state supreme court summarily denied this claim which was presented for the first time in

7 | his state habeas petitions. (*See* Ans., Exs. 13, 14.)

8 | Claims of ineffective assistance of appellate counsel are reviewed according to the

9 | standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Robbins*, 528

10 | U.S. 259, 285 (2000); *Moormann v. Ryan*, 628 F.3d 1101, 1106 (9th Cir. 2010); *Miller v.*

11 | *Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). First, the petitioner must show that

12 | counsel's performance was objectively unreasonable, which in the appellate context

13 | requires the petitioner to demonstrate that counsel acted unreasonably in failing to

14 | discover and brief a merit-worthy issue. *Smith*, 528 U.S. at 285; *Moormann*, 628 F.3d at

15 | 1106. Petitioner must overcome the "strong presumption that [appellate] counsel's

16 | conduct [fell] within the wide range of reasonable professional assistance," *Strickland*,

17 | 466 U.S. at 689. Second, the petitioner must show prejudice, which in this context means

18 | that the petitioner must demonstrate a reasonable probability that, but for appellate

19 | counsel's failure to raise the issue, the petitioner would have prevailed in his appeal.

20 | *Smith*, 528 U.S. at 285-86; *Moormann*, 628 F.3d at 1106.

21 | With regard to the first prong, the Supreme Court has held that appellate counsel

22 | need not, and should not, raise every nonfrivolous claim. *Smith*, 528 U.S. at 288.

23 | Instead, appellate counsel should select from among the various appealable issues "in

24 | order to maximize the likelihood of success on appeal." *Id.* In discussing this standard,

25 | the Supreme Court noted that "it is still possible to bring a *Strickland* claim based on

26 | counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel

27 | was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)

28 | ("Generally, only when ignored issues are clearly stronger than those presented, will the

1  presumption of effective assistance of counsel be overcome").” *Id.* With regard to the

2  second prong, “[a] reasonable probability is a probability sufficient to undermine

3  confidence in the outcome.” *Strickland*, 466 U.S. at 694. It is not enough to show that

4  counsel's errors had some conceivable effect on the outcome of the proceeding because

5  “virtually every act or omission of counsel would meet that test... and not every error that

6  conceivably could have influenced the outcome undermines the reliability of the result of

7  the proceeding.” *Id.* at 693 (internal citation omitted).

8      It appears that appellate counsel did in fact challenge the sufficiency of the

9  evidence to support the gang enhancement alleged in connection with the assault

10  conviction, but not as to the robbery and drug convictions. (Ans. Ex. 5 at 30-33.) The

11  jury returned a not true finding on the gang enhancement for the assault, and therefore the

12  state appellate court did not address the claim on appeal. *See supra* at 10, n.4.

13  Respondent argues that while counsel may have overlooked the jury's finding as to that

14  enhancement, the fact that he raised the claim demonstrates his knowledge of the legal

15  issue. (Ans. at 14.) Respondent asserts that counsel's decision not to challenge the

16  sufficiency of the evidence as to the other gang enhancements suggests a conscious

17  decision on his part to “winnow out weaker arguments on appeal,” by which the state

18  court could have reasonably concluded that there was a valid tactical basis for counsel's

19  omission. (*Id.*)

20      Applying the standard of review under *Strickland* and *Smith*, the Court finds that

21  counsel's omission, whether intentional or an oversight, is not sufficient to demonstrate

22  that counsel was incompetent because the ignored issues here were clearly not stronger

23  than those presented. *See Smith*, 528 U.S. at 288. The enhancement allegation for the

24  assault was clearly the weakest charge and therefore the strongest issue to pursue had

25  Petitioner been found guilty; the evidence to support an inference that Petitioner stabbed

26  the victim to further the interest of a criminal street gang rather than his own interests – to

27  defend himself or effect an escape – was arguably weak. But the fact that the jury found

28  true the other two gang enhancements indicates that there was substantially more

1  evidence that Petitioner's purpose in robbing the victim and possessing the cocaine base
2  for sale was for the benefit of a criminal street gang.  These challenges were not "dead-
3  bang winner[s]" as Petitioner asserts.  (Pet. Attach. at 34.)  Even if the issues are "obvious
4  from the trial record," (*id.*), appellate counsel does not have a constitutional duty to raise
5  every nonfrivolous issue requested by Petitioner.  *See Jones v. Barnes*, 463 U.S. 745, 751-
6  54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at
7  1434 n.10.  The weeding out of weaker issues is widely recognized as one of the
8  hallmarks of effective appellate advocacy.  *See id.* at 1434.
9          As for the second prong of prejudice, Petitioner fails to demonstrate that he would
10 have prevailed upon appeal if appellate counsel had raised the challenges to the two gang
11 enhancements.  There was substantial evidence presented at trial by expert witnesses
12 showing that: Petitioner was a member and active participant in the Norteno gang,
13 (Reporter's Transcript ("RT"), Volume 5 at 748-749, 753-758); the robbery of the victim
14 took place in Norteno territory, (5 RT 507, 737-739); the robbery took place according to
15 established Norteno methods for committing robberies, (5 RT 511, 514-515, 544-545,
16 760-763); Petitioner participated in the robbery with two other known Norteno gang
17 members, (5 RT 600, 695-696, 723, 726, 737-739, 6 RT 886); and Petitioner's possession
18 of cocaine base for sale was consistent with Norteno drug trafficking, (5 RT 717-718,
19 756-757).  Based on the overwhelming evidence of Petitioner's gang involvement, the
20 Court is not persuaded that Petitioner was prejudiced by appellate's performance to a
21 degree that undermines confidence in the outcome.  *See Strickland*, 466 U.S. at 694.
22 Ultimately, Petitioner has failed to show with reasonable probability that he would have
23 prevailed in his appeal but for appellate counsel's failure to challenge the gang
24 enhancements for the robbery and drug convictions.  *See Smith*, 528 U.S. at 285-86.
25         Because Petitioner has failed to show that appellate counsel's performance was
26 deficient and that he was prejudiced by it, the Court finds that the state court's rejection
27 of this claim was not contrary to, or an unreasonable application of, clearly established
28 Supreme Court precedent, nor was it based on an unreasonable determination of the facts

1  in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, Petitioner is not

2  entitled to habeas relief on this claim.

3

4                                    **CONCLUSION**

5        For the reasons set forth above, the petition for writ of habeas corpus is **DENIED**.

6        The federal rules governing habeas cases brought by state prisoners require a

7  district court that denies a habeas petition to grant or deny a certificate of appealability

8  ("COA") in its ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. §

9  2254.  Petitioner has not shown "that jurists of reason would find it debatable whether the

10  petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*,

11  529 U.S. 473, 484 (2000).  Accordingly, a COA is **DENIED**.

12        The Clerk shall close the file.

13        **IT IS SO ORDERED.**

14

15  DATED: _August 22, 2014_

16                                            BETH LABSON FREEMAN
                                            United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus; Denying COA
P:\PRO-SE\BLF\HC.12\03078Rivera_denyHC.wpd            18